**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Alfred Edwards**, *et al.*, | ) | **CASE NO. 1: 11 CV 2205** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Woodforest National Bank**, *et al.*, | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants**. | ) | |


Plaintiffs Alfred Edwards and The Keller Group Distributors and Real Estate Developers,

Inc. (the Keller Group) filed this action against Defendants U.S. Bank, Robert Lyons,

Woodforest National Bank (Woodforest), Loretta Anderson, and unnamed "John Doe"

defendants alleging federal civil rights and state tort law claims.  The named defendants have all

moved to dismiss plaintiffs' amended complaint.  Pending are:  Motion of Defendants U.S. Bank

and Robert Lyons to Dismiss the Complaint (Doc. 6) and Defendants Woodforest National Bank

and Loretta Anderson's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 15).  For the

reasons stated below, the motions to dismiss are denied as to the civil rights claim brought by the

Keller Group as against U.S. Bank and Robert Lyons under 42 U.S.C. § 1981, but the motions to

dismiss are otherwise granted as to all other claims.

### Facts

The following facts are alleged in plaintiffs' amended complaint.  Plaintiff Alfred Edwards is an African American contractor and real estate developer who "partnered with" the Keller Group and formulated a corporation to develop "Martin Luther King Upscale Entertainment Complexes" in multiple cities in the United States.  (Am. Complt., ¶¶ 1, 2.)  The amended complaint alleges that Defendant U.S. Bank "made [a] commitment of $100,000.00 towards the goal of Plaintiffs Alfred Edwards . . . and the Keller Group's . . . business plan to develop the entertainment complexes."  (Am. Complt., ¶ 1.)  Plaintiffs allege that "Edwards and the Keller Group partners entered into a confidential banking agreement with U.S. Bank that consisted of the issuance of a line of credit, a revolving credit line and corporate credit cards." (*Id*., ¶ 3.)  "The credit was approved and corporate credit cards were processed, approved and authorized by U.S. Bank, and given to the Keller Group."  (*Id*., ¶ 4.)  On July 27, 2011, U.S. Bank released a check to the Keller Group in the amount of $25,000 pursuant to the banking agreement.  (*Id*., ¶ 5.)  Thereafter, "[p]ayment checks were made out to various members of the Keller Group, which were either cashed or deposited with Wood Forest Bank."  Plaintiffs allege that, "[a]t the time, . . . there was no problem with the banking agreement between U.S. Bank and the Keller Group of which Plaintiffs [sic] is a member."  (*Id*., ¶ 6.)

However, plaintiffs allege that, after U.S. Bank issued the $25,000 check to the Keller Group, Defendant Robert Lyons, the district manager of U.S. Bank, suddenly "withdrew the $25,000 check" as a result of a "disagreement" between Lyons and the "security department" and a former member of the Keller Group.  (*Id*., ¶ 7-8.)  Plaintiffs allege that this "sudden

withdrawal of the $25,000.00 check" caused them injury, including causing  "issues of nonpayment and an all out unwarranted attacks [sic] and investigation against Plaintiffs."  (*Id*., ¶ 9.)

Plaintiffs further allege:  "Information was relayed to Plaintiffs that Mr. Robert Lyons withdrawal of credit and breach of banking agreement was based on Plaintiffs being a member of the black race."  (*Id*., ¶ 10.)

In addition, plaintiffs allege that their counsel, Attorney Donald R. Murphy, contacted Defendant Loretta Anderson, Vice President of Woodforest, and that "Ms. Anderson made several derogatory and slanderous remarks to counsel and others" about plaintiffs, specifically, "that Plaintiffs was [sic] a criminal and defrauded or attempted to defraud the bank out of thousand of dollars."  (*Id*., ¶ 11.)  Anderson allegedly told plaintiffs' counsel "and others that Plaintiff Edwards was a convicted felon, and that she intends to bring criminal charges against Plaintiffs for defrauding or attempting to conspire to defraud the bank out of money."  (*Id*., ¶ 12.) The amended complaint does not allege when this conversation took place and does not set forth any factual allegations indicating "others" to whom Anderson allegedly made slanderous remarks.

The amended complaint alleges five claims for relief arising from the alleged facts. Count I alleges a claim for "Interference with Prospective Business Opportunity and Destruction of Future to Franchise."  Plaintiffs allege that "Defendants and its [sic] agents used Plaintiff Edward's prior conviction to speculate on the legitimacy of the Development of the MLK Entertainment Complex Franchise."  Plaintiffs further allege that:  "[t]he action of Defendants in interfering with Alfred Edward's and the Keller Group's opportunity to establish a MLK

3

franchise was wrongful and not justified . . . by any legitimate business interest."  (*Id*., ¶¶ 15, 16.)

Count II alleges a claim for "Interference with Prospective Business Opportunity-Destruction of Alliance."  Count II alleges that defendants interfered with "Alfred Edwards' and the Keller Group's alliance and partnership itself by withdrawing monies it had already released contrary to the banking agreement, in order to break the strength of the Alliance."  (*Id*., ¶19.) Plaintiffs allege defendants conduct "fragmented the Partnership and destroyed its allied strength and value" and "interfer[ed] with [plaintiffs'] ability to move into phase two of developing the MLK Entertainment Complex and Franchise."  (*Id*., ¶¶ 19, 22.)

Count III alleges a claim for breach of the fiduciary duties of loyalty and care.  This count alleges that Woodforest, "by reason of its status and statutory identity as a Financial Institution," owed plaintiffs the fiduciary duties of loyalty, care, and confidentiality and breached those duties owed to Edwards "as a bank customer and citizen of the United States" by the "oral slanderous statements" made by Anderson that "disclos[ed] inaccurate information about Plaintiff Edward's prior conviction."  (*Id*., ¶¶ 25-26.)

Count IV alleges a claim for "slander and defamation of character."  Plaintiffs allege: "The statements, individually and collectively, referred to herein have caused, are causing, and will cause Plaintiffs to suffer injury to their professional standing, to the reputation and good name; they have held, and Defendants collective acts will continue to hold Plaintiffs up to public scandal and ridicule." (*Id*., ¶ 29.)  The only statements alleged in the amended complaint are alleged statements made by Anderson during a telephone conversation initiated by plaintiffs' counsel.  Plaintiffs' defamation claim alleges:

4

    11.  Counsel of record Attorney Donald R. Murphy for Plaintiffs did contact
Loretta Anderson, V.P. of Wood Forest Bank, Ms. Anderson made several
derogatory and slanderous remarks to counsel and others, alleging that Plaintiffs
was a criminal and defrauded or attempted to defraud the bank out of thousands
of dollars.

    12.  Ms. Anderson told attorney Donald R. Murphy and others that Plaintiff
Edwards was a convicted felon, and that she intends to bring criminal charges
against Plaintiffs for defrauding or attempting to conspire to defraud the bank out
of money.

(*Id.*, ¶¶ 11, 12.)

Finally, count V alleges a claim for racial discrimination.  Plaintiffs allege:  "The acts of

Robert Lyons and Defendants were in violation of Section, 1981 and 1983, 1985 of Title 42 of

the United States Code, and resulted in the deprivation of the civil rights of Alfred Edwards an

African American, and the Keller Group a black minority owned business as a direct result of

clear racially motivated discrimination."  (*Id.*, ¶ 35.)

Defendants contend that none of plaintiffs' alleged claims states a viable claim for relief.

**Standard of Review**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.

In order to survive a motion to dismiss, a complaint's factual allegations must be enough to raise

a right to relief above the speculative level on the assumption that all of the complaint's

allegations are true.  *Ass'n of Cleveland Firefighters v. City of Cleveland, Ohio*, 502 F.3d 545,

548 (6th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a

motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state

a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

*See also Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) ("To survive a

motion to dismiss, the complaint must contain either direct or inferential allegations respecting

all material elements to sustain a recovery under some viable legal theory.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct.  at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

**Discussion**

*Tortious Interference with Prospective Business Opportunity*

As set out above, Counts I and II of the amended complaint allege that defendants tortiously interfered with plaintiffs' prospective business opportunities.  Count I alleges that defendants' actions tortiously interfered with plaintiffs' "opportunity to establish a MLK franchise" by using "Edward's prior conviction to speculate on the legitimacy of the Development of the MLK Entertainment Complex Franchise," and count II alleges that defendants tortiously interfered with plaintiffs' "alliance and partnership itself" by "withdrawing" money that had already been released to plaintiffs, thereby interfering with plaintiffs' "ability to move into phase two of developing the MLK Entertainment Complex and Franchise."

Under Ohio law, interference with business relationships or contracts generally occurs when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another or not to perform a contract with another.  *Wauseon Plaza Ltd. Psp. v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 588, 807 N.E.2d 953, 962-63 (2004); *A&B- Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr.*

6

*Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294 (1995). The elements of a cause of action for interference with a prospective business opportunity under Ohio law are: (1) the existence or the prospect of a business relationship; (2) that defendant knew of the plaintiff's prospective relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4) the interference was without justification; and (5) the interference caused the plaintiff to suffer damages. *Chrvala v. Borden, Inc*., 14 F.Supp. 2d 1013, 1023 (S.D. Ohio 1998); *Dish Network, LLC v. Fun Dish, Inc.*, No. 1: 08 CV 1340, 2010 WL 5230860, at *5 (N.D. Ohio Dec. 16, 2010).

Defendants contend plaintiffs have not alleged viable tortious interference claims in either count I or count II. Defendants U.S. Bank and Lyons (collectively referred to as the "U.S. Bank defendants") argue that plaintiffs' claims fail to state a claim against them because: (1) plaintiffs' amended complaint does not allege a specific contract or business relationship with any third party allegedly terminated as a result of defendants' conduct; (2) plaintiffs' amended complaint does not allege that U.S. Bank "ever had knowledge of any such contracts"; and (3) "[t]here are no facts alleging or even implying that the Bank intentionally procured a breach of a contract"; and (4) no "allegations of resulting damages that Plaintiffs might have sustained." (U.S. Bank Mem. at 6.) The U.S. Bank defendants argue that plaintiffs' allegations indicate at the most that the bank breached a loan contract with plaintiffs which caused plaintiffs' business damage, but such allegations of breach of contract are insufficient to plead a claim that the bank tortiously interfered with plaintiffs' prospective business opportunities.[1]

_____

[1]

The U.S. Bank defendants make the general argument at the outset of their motion to dismiss that all of the claims alleged in plaintiffs' complaint, "all of which incorporate and are derived from the allegation that the Bank made a loan to the Keller Group," fail to

Woodforest and Anderson (collectively referred to as the "Woodforest defendants") argue in their motion to dismiss that plaintiffs' tortious interference claims are insufficient as against them because "[t]here are no specific factual allegations specifying any improper actions by the Woodforest Defendants" as to tortious interference.  (Woodforest Mem. at 3.)  They argue:  "[t]here are no facts supporting the assertion that either of the Woodforest Defendants speculated on the legitimacy of the MLK franchise or that they were even aware of . . . Edwards' potential involvement in the MLK franchise."  (Mem. at 3.)  Likewise, the Woodforest defendants argue that "Plaintiffs' second claim for interference with prospective business opportunity is not based on any conduct in which the Woodforest Defendants participated."  *Id.*

The Court agrees with defendants that plaintiffs have failed to allege viable claims for tortious interference in counts I and II.  As noted above, a tortious interference claim under Ohio law requires the existence of a business relationship of the plaintiff, or the prospect of a business opportunity of the plaintiff, that defendants had knowledge of and intentionally interfered with. Neither count I nor count II alleges or identifies any business "relationship" or "prospect of a business relationship" that plaintiffs had with anyone other than themselves that was connected to their business plan to "develop" and "franchise" Martin Luther King Upscale Entertainment Complexes in cities throughout the United States.  Count I alleges that defendants interfered with plaintiffs' "opportunity to establish an MLK franchise," but no facts are alleged in the amended

---

state a plausible claim for relief because plaintiffs have not alleged or demonstrated the existence of a written loan agreement and oral loan agreements are unenforceable under Ohio law.  (U.S. Bank Mem. at 3.)  Plaintiffs, however, have not alleged a claim against defendants for breach of the loan agreement in the case.  Defendants' argument that a written loan agreement is not alleged will be considered only if defendants demonstrate that such a written loan agreement is necessary to plead the substantive claims alleged.

complaint which plausibly suggest that plaintiffs had any franchise agreement, or franchise opportunity, with any person or entity.  Further, count I does not allege facts which plausibly suggest that defendants – whether by their conduct in using Edwards' prior conviction to "speculate on the legitimacy of the Development of the MLK Entertainment Complex Franchise" or any other conduct – intentionally caused anyone to discontinue a business relationship with plaintiffs.  Count I fails to allege sufficient factual content to raise a right to relief on a theory of tortious interference with prospective business opportunity above a speculative level.

Count II likewise fails to state a claim for tortious interference.  Like count I, count II fails to allege a prospective business opportunity with a third party with which defendants tortiously interfered.  Count II alleges only that defendants' withdrawal of their loan commitment caused problems for plaintiffs' "alliance and partnership itself."

As defendants argue, even assuming plaintiffs' allegations are sufficient to suggest that U.S. Bank breached a loan commitment to plaintiffs, the allegations are insufficient to plead claims that defendants tortiously interfered with plaintiffs' prospective business opportunities under Ohio law, which requires the existence or prospect of a business relationship or opportunity and an inducement by the defendant to a third party not to enter into or continue the business relationship.  *See Wauseon Plaza*, 156 Ohio. App. 3d at 588.  Plaintiffs' general assertions in their opposition briefs that "business opportunities were lost with building multiple MLK Entertainment Complexes" (Opp. to U.S. Bank at 8, Opp. to Woodforest Bank at 5) are purely conclusory and insufficient to plead required elements of a tortious interference claim, namely:  (1) the existence or the prospect of a business relationship; (2) that defendants knew of

9

plaintiffs' prospective relationship; and (3) that defendants intentionally and materially interfered with plaintiffs' prospective relationship.  Defendants' motions to dismiss are granted with respect to plaintiffs' tortious interference claims.

*Breach of Fiduciary Duty*

"A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."  *In re Termination of Employment of Pratt*, 40 Ohio St. 2d 107, 115 (1974).  A party asserting a breach of fiduciary duty must establish three elements: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) an injury proximately resulting from the breach.  *Chesner v. Stewart Title Guar. Co.*, No. 1: 06 CV 00476, 2008 WL 553773, at * 14 (N.D. Ohio Jan. 23, 2008).  Moreover,

> It has long been Ohio law that a debtor-creditor relationship does not generally create a fiduciary relationship.  *Groob v. Keybank*, 108 Ohio St.3d 348, 351, 843 N.E.2d 1170 (2006); *see also Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282, 286 390 N.E.2d 320 (1979) ("The relationship of debtor and creditor without more is not a fiduciary relationship.").  Therefore, Ohio law does not recognize a fiduciary duty between a bank and its customer absent 'special circumstances.'

*PNC Bank v. Oswald*, Case No. 3:1-CV-1976, 2011 WL 1364224, at * 2 (N.D. Ohio Apr. 11, 2011).

All of the defendants move to dismiss plaintiffs' claim for breach of fiduciary duty on the basis that, absent "special circumstances," there is no fiduciary relationship between a bank and its customer under Ohio law.  (In addition, the U.S. Bank defendants assert that plaintiffs' pleading alleges only that Woodforest breached fiduciary duties.)

Plaintiffs have not disputed that there is generally no fiduciary relationship between a bank and a customer under Ohio law.  Nor have they pointed to or argued in their opposition

10

briefs that the facts alleged in their amended complaint support a finding that defendants had a "special relationship" to plaintiffs such that the defendants owed plaintiffs fiduciary duties.[2] Indeed, the allegations in plaintiffs' amended complaint indicate only that U.S. Bank made a loan "commitment" to plaintiffs and that plaintiffs deposited and cashed checks at Woodforest. (*See* Am. Complt., ¶¶ 1, 6.)  The facts alleged, suggesting at the most that plaintiffs had a financing relationship with U.S. Bank and that Woodforest acted as a depositary institution with respect to plaintiffs' checks, are insufficient to establish a "special relationship" between the bank and plaintiffs such that defendants can be said to owe plaintiffs fiduciary duties.  *See, e.g.*, *Groob v. Keybank*, 108 Ohio St.3d 348, 351, 843 N.E.2d 1170 (2006) (no special relationship existed between prospective borrower and bank when prospective borrower sought financing for purchase of a company, and bank did not owe fiduciary duty to prospective borrower, where parties were dealing at arm's length and looking out for their own best interests); *Collins v. National City Bank*, Case No. 19884, 2003 WL 22971874, at *2 (Ohio App. Dec. 19, 2003) (no fiduciary duty owed to a customer by bank which merely acted as a depositary institution).

In that plaintiffs' have failed to plead facts which plausibly suggest that a fiduciary relationship existed between plaintiffs and defendants, the Court grants defendants' motions to dismiss count III.

*Defamation*

As noted above, plaintiffs' alleged defamation claim is based on a telephone conversation

---

[2]

    Plaintiffs filed three separate (and untimely) opposition briefs to the two separate motions to dismiss.  (*See* Doc. Nos. 18, 19, 20.)  Although defendants point out that plaintiffs were untimely in filing their opposition briefs, plaintiffs' briefs have been considered as no motion to disregard them was made.

initiated by plaintiffs' counsel with Anderson in which Anderson allegedly made "derogatory and slanderous remarks to [plaintiffs'] counsel and others, alleging that Plaintiff was a criminal and defrauded or attempted to defraud the bank out of thousands of dollars" and stated that she intended to bring criminal charges against plaintiffs for defrauding or attempting to conspire to defraud the bank out of money.  (Am. Complt., ¶¶ 11, 12.)

The elements of a claim of defamation under Ohio law (whether libel or, as alleged here, slander) are: (1) a false and defamatory statement; (2) made about the plaintiff; (3) published by defendant to a third party without privilege; (4) with fault or at least negligence on the part of the defendant; (5) that was either defamatory *per se* or caused special harm to the plaintiff.  *Davis v. Jacobs*, 126 Ohio App. 3d 580, 582 (Ohio App. 1998).

The Woodforest defendants contend that plaintiffs' defamation claim fails because plaintiffs do not adequately allege the first and fifth elements of the claim.  They argue the first element is not met because plaintiffs do not state that Anderson's alleged statements to plaintiffs' counsel were false.  Rather, the Woodforest defendants assert that "[p]ublic records in fact show that the Plaintiff had a prior conviction for bank fraud, so there would be no basis to assert the falsity relating to [Edward's] criminal record."  (Woodforest Mem. at 6.)  In addition, the Woodforest defendants argue:

> [T]he complaint alleges that the remarks were made to Plaintiff's counsel "and others" . . . [but t]here are no facts asserted in the Amended Complaint identifying anyone "other" than Plaintiff's counsel who spoke to the Woodforest Defendants about the Plaintiff.  Publication only to Plaintiff's counsel would not cause the harm alleged, and the Complaint does not specify how or to whom the alleged statements were otherwise published.

(*Id.* at 6-7.)

The U.S. Bank defendants move to dismiss plaintiffs' defamation claim against them

because plaintiffs do not allege that they made any defamatory statements or "slandered or defamed either Plaintiff."  Plaintiffs allege only that Anderson made derogatory and slanderous remarks.  (U.S. Bank Mem. at 9-10.)

Plaintiffs do not respond in their opposition briefs to the Woodforest defendants' argument that plaintiffs have not sufficiently alleged falsity for purposes of the defamation claim.  In addition, plaintiffs do not identify in their briefs anyone other than plaintiffs' counsel who heard Anderson's alleged statements.  Plaintiffs simply assert in their opposition briefs:

> Defendants contend that the defamation claim, which is asserted against them, must be dismissed for failure to state a claim either because (1) Plaintiff has not shown that he suffered damages, or (2) the statements attributed to them were not made under color of law.  However, Plaintiff has sufficiently alleged each [of the] elements of a defamation claim, as such a 12(B)(6) dismissal is improper at this juncture.

> Plaintiff [sic] plead defamation and can ultimately prove special damages of harm of a material or pecuniary nature.  Here Plaintiff can offer some concrete proof that his reputation has been injured.  Therefore, contrary to Defendants' argument the damages element is not waived in this case.

(Pltf. Opp. to Woodforest Mem. at 3-4.)

Plaintiffs' defamation claim is dismissed.  As the Woodforest defendants point out, the amended complaint does not allege what aspect of Anderson's statements to plaintiffs' counsel were false, and a "false and defamatory statement" is a required element of a claim for defamation.  Further, a complaint alleging defamation must provide a short and plain statement showing that a plaintiff is entitled to relief such that the defendant is given fair notice of the factual basis for the alleged claim.  *Gilbreath v. Plumbers, Pipefitters, & Service Technicians Local 502, et al.*, No. 1: 09 CV 628, 2010 WL 6423321, at *5 (S.D. Ohio Aug. 30, 2010).  Plaintiffs' conclusory assertion that Anderson made slanderous statements to "others" beside

13

plaintiffs' counsel and that plaintiff can ultimately prove special damages and injury to reputation are insufficient to give defendants fair notice of the factual basis of plaintiffs' defamation claim. In addition, plaintiffs do not allege facts supporting a plausible conclusion that the U.S. Bank defendants are responsible for any defamatory statements. In sum, defendants' motions to dismiss the defamation claim are granted because plaintiffs have failed to plead sufficient factual content to make out a "plausible" defamation claim against any defendant.

*Race discrimination*

Plaintiffs' claim of race discrimination is alleged in paragraphs 34 and 35 of the amended complaint, which allege:

> 34. Plaintiffs alleges [sic] and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.
>
> 35. The acts of Robert Lyons and Defendants were in violation of Section, 1981 and 1983, 1985 of Title 42 of the United States Code, and resulted in the deprivation of the civil rights of Alfred Edwards an African American, and the Keller Group a black minority owned business as a direct result of clear racially motivated discrimination."

(Am. Complt., ¶ 35.)

Section 1981 protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" involving both public and private actors. 42 U.S.C. § 1981(a); *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). To establish a claim under § 1981, a plaintiff must plead and prove that: (1) he belongs to an identifiable class of people subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's conduct abridged a right stated in section 1981(a). *Id.* Section 1981(a) protects a person's right "to make and enforce contracts, to

sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property. . . ."  42 U.S.C. § 1981(a).  The statute defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person acting "under color of" state law.  *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003).

Section 1985 prohibits "conspiracies" to interfere with civil rights.  *See* 42 U.S.C. § 1985.  Section 1985(1) prohibits conspiracies to interfere with federal officers in the performance of their duties; Section 1985(2) prohibits conspiracies to influence parties, witnesses, or jurors in federal court proceedings and conspiracies to interfere with due process in state courts; and Section 1985(3) prohibits conspiracies to deprive persons of their equal protection rights.  *Fox v. Michigan State Police Dept.*, 173 Fed. Appx. 372, 376 (6th Cir. 2006).  Alleging a claim under § 1985(3) – the only section that could possibly be applicable here – requires that a plaintiff plead four elements:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; and (3) an action in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege or a citizen of the United States.  *Rondigo, LLC v. Township of Richmond, Mich.*, Case No. 08 CV 10432, 2012 WL 1021726, at * 6 (E.D. Mich. Mar. 27, 2012).

The U.S. Bank defendants argue that a claim by Edwards under Section 1981 fails under the Supreme Court's decision in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006).  The Supreme Court held in *Domino's* that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Id*. at 479-80.  The court held that "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of *their own contractual relationship*" and cannot bring a claim under § 1981 where someone else's contract  is breached, such as the contract of a corporation or organization with which the plaintiff is affiliated.  *Id*. at 480 (emphasis added). Thus, in *Domino's,* the Supreme Court held that "Respondent McDonald, a black man, [and] sole shareholder and president of JWM Investments" could not bring a Section 1981 claim alleging that JWM and Domino's entered into contracts that Domino's subsequently breached due to racial animus toward McDonald.  *Id.*  The U.S. Bank defendants argue *Domino's* demonstrates that Edward's Section 1981 claim fails because the alleged loan contract at issue here "was between the Bank and the Keller Group, not Edwards."  (U.S. Bank Mem. at 12.)  *See also* U.S. Bank Rep. at 4 ("Edwards cannot make a claim unless he was the borrower but his pleading explains that the Keller Group – if anyone – was the borrower.")[3]

The Woodforest bank defendants argue there are no facts alleged in the amended complaint "supporting the section 1981 claim with respect to [them]."  (Mem. at 9.)

The Woodforest defendants' argument has merit.  The amended complaint does not

---

[3]

The allegations in the amended complaint indicate that the loan agreement was between U.S. Bank and the Keller Group.  *See, e.g.*, Amended Complaint at ¶ 6 ("there was no problem with *the banking agreement between U.S. Bank and the Keller Group of which Plaintiffs [sic] is a member*." (emphasis added.)

allege facts suggesting that the Woodforest defendants engaged in any conduct violating Section 1981.  Therefore, the Section 1981 claim is dismissed as against the Woodforest defendants.

As to the claim against the U.S. Bank defendants, plaintiffs do not dispute in their opposition brief that the loan commitment allegedly made by U.S. Bank was made to the Keller Group and not to Edwards.  In their opposition brief, plaintiffs state only:

> Defendants position presupposes that Edwards does not own the Keller Group, not only does Edwards own the Keller Group, but Edwards is the founder. Defendants point the finger in numerous instances of conclusory allegations made by Plaintiffs, yet indulges in making conclusory allegations throughout its motion to dismiss.

(Pltfs. Opp. to U.S. Bank Mot. at 13.)

However, even if Edwards is the owner and founder of the Keller Group as plaintiffs state in their opposition brief, *Domino's* teaches that Edwards may not assert a claim under Section 1981 unless Edwards *personally* had rights under the contract allegedly breached. Plaintiffs do not allege facts suggesting and do not argue in their opposition brief that Edwards personally had rights under the alleged loan agreement with U.S. Bank.  Therefore, Edwards cannot assert a claim under Section 1981.  *See Domino's*.  Plaintiffs' Section 1981 claim is dismissed to the extent it is brought by Edwards.

All of the defendants argue in their motions that the Section 1981 claim alleged in paragraphs 34 and 35 of the amended complaint is brought only by Edwards.  (*See* U.S. Bank Mem. at 12; Woodforest Bank Mem. at 8.)  However, although plaintiffs do dispute this assertion in their opposition briefs, the allegations in paragraph 35 (set out above) on their face suggest that the Keller Group also purports to assert a Section 1981 claim.  Courts have held that minority-owned businesses have standing and may bring claims under Section 1981.  *See, e.g.,*

17

*Emory Utilities, Inc., v. Time Warner Cable, Inc.*, No. 7: 09 CV 169, 2010 WL 2402888, at * 2 (E.D. N.C. June 11, 2010).  Apparently recognizing (although not addressing) such authority, the U.S. Bank defendants argue in their reply that "[t]he Keller Group has not stated a plausible claim of discrimination under section 1981."  (U.S. Bank Rep. at 4.)  They argue this is because the amended complaint contains insufficient factual allegations to find that an agreement to make a loan existed or that it was unlawfully withdrawn.  Defendants rely on a case supporting the proposition that oral loan commitments are unenforceable under Ohio's statute of frauds.  *See id*, citing *Roth, et al. v. National City Bank*, No. C-100216, 2010 WL 4884453, at *2 (Hamilton Cty. Ct. of App. Dec. 1, 2010).  Plaintiffs, however, contend in their opposition brief that a loan contract existed.  (Pltf. Opp. at U.S. Bank Mot. at 3.)  Although they do not point to any specific writing, they assert that "there is a plethora of evidence in the form of written instruments."  (*Id.* at 3, n.1.)

Given that this is the pleading stage, the Court will allow the Keller Group to proceed past a motion to dismiss on a claim under Section 1981 against the U.S. Bank defendants. Plaintiffs allege that the Keller Group is an "African American minority owned business" and that Lyons suddenly withdrew a loan commitment to the Keller Group due to racial animus. Defendants have not cited authority suggesting that a written contract is necessary to make out a claim under Section 1981.  (Am. Complt., ¶ 1.)  Therefore, a Section 1981 claim at least appears plausible against the U.S. Bank defendants at this juncture.  Accordingly, defendants' motions to dismiss are denied with respect to the Section 1981 claim asserted by the Keller Group against the U.S. Bank defendants in count V.

This leaves plaintiffs' claims under Sections 1983 and 1985.  Defendants argue that

18

plaintiffs' Section 1983 claim fails because the amended complaint does not allege any facts demonstrating that the defendants acted "under color of state law," and they argue plaintiffs' Section 1985 claims fail because the amended complaint does not allege facts indicating a "conspiracy" among the defendants to violate plaintiffs' civil rights.

These arguments by defendants are persuasive.  Plaintiffs' amended complaint contains no allegations whatsoever that any of the defendants acted "under color of" law and does not allege any facts that would support such a conclusion.  Plaintiffs merely allege in the amended complaint that "[t]he acts of Robert Lyons and Defendants . . . result in the deprivation of the civil rights of Alfred Edwards an African American, and the Keller Group a black and minority owned business as a direct result of clear racially motivated discrimination."  (Am. Complt., ¶ 35.)  This is insufficient to allege state action.  Plaintiffs assert in their opposition briefs that "Plaintiff has stated that the Bank through its employees had consulted with the state of Ohio to conclude that Alfred Edwards was a criminal" and, "[a]s such," the bank officer's actions were carried out under color of law.  But such facts are not alleged in the complaint.  Furthermore, even if these facts were alleged, plaintiffs' position is not persuasive (and plaintiffs cite no authority demonstrating) that merely "consulting" with a state actor to conclude that a person was a criminal constitutes state action.  Plaintiffs' amended complaint, in short, is insufficient to allege state action, and plaintiffs' Section 1983 claim is dismissed.

Likewise, plaintiffs' amended complaint fails to allege facts to support a plausible claim of a "conspiracy" to violate plaintiffs' civil rights under Section 1985.

> A Section 1985(3) [conspiracy] claim requires, among other things, that the accused conspirators entered the conspiracy for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws.  The complaint thus must allege both a conspiracy and some class-based

> discriminatory animus behind the conspirator's action.  Further, conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.

*Pahssen v. Merrill Community School Dist.*, 668 F.3d 356, 367 (6th Cir. 2012) (internal citations and quotation marks omitted).

Plaintiffs' amended complaint does not allege that any of the defendants conspired together to deprive plaintiffs of civil rights.  The amended complaint does not mention the word conspiracy and does not allege facts which plausibly suggest that defendants conspired for the purpose of depriving plaintiffs of civil rights, or that the race-based animus was behind such a conspiracy.

Plaintiffs state in their opposition briefs that "Defendants conspired and acted together to defame and interfere with Plaintiffs' business relationships."  (Pltf. Opp. to Anderson Mot. at 7.)  Plaintiffs' assertions in their opposition brief are not alleged in their amended complaint.  Furthermore, a conspiracy to act together to "defame" plaintiffs and "interfere" with their "business relationships" would not constitute a conspiracy to violate civil rights based on class based animus as prohibited by Section 1985.  The amended complaint fails to set forth facts sufficient to allege any plausible claim under Section 1985, and the Court grants defendants' motions to dismiss such claims.

**Conclusion**

For all of the reasons stated above, defendants' motions to dismiss are granted as to all of plaintiffs' claims asserted in the amended complaint except the race discrimination claim brought by the Keller Group against the U.S. Bank defendants under 42 U.S.C. § 1981.  The factual content alleged in plaintiffs' amended complaint is insufficient to allow the Court to draw

reasonable inferences that the defendants are liable for any other substantive claim.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/24/12

21