**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Alfred Edwards**, *et al.*, | ) | **CASE NO. 1: 11 CV 2205** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Woodforest National Bank**, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants**. | ) | |

Plaintiffs Alfred Edwards and The Keller Group Distributors and Real Estate Developers, Inc. ("the Keller Group") filed this action against Defendants U.S. Bank, Robert Lyons, Woodforest National Bank (Woodforest Bank), Loretta Anderson, and "John Doe" defendants alleging federal and state law claims. The only remaining claim in the case is a claim under 42 U.S.C. §1981 by the Keller Group against U.S. Bank and Lyons.[1] U.S. Bank and Lyons move for summary judgment on this remaining claim (Doc.28.) For the reasons stated below, defendants' motion is granted.

---

[1] Therefore, as used in this opinion, "the plaintiff" or "plaintiff" refers to the Keller Group.

1

**Facts**

Alfred Edwards is an African American contractor and real estate developer who "partnered with" plaintiff the Keller Group and formulated a corporation to develop "Martin Luther King Upscale Entertainment Complexes" in multiple cities in the United States. (Am. Complt., ¶¶ 1, 2.) The complaint alleges that U.S. Bank made a loan commitment of "$100,000.00 towards the goal of Plaintiffs Alfred Edwards . . . and the Keller Group's . . . business plan to develop the entertainment complexes," that U.S. Bank released a check to the Keller Group in the amount of $25,000 pursuant to this banking agreement on July 27, 2011, but that, after U.S. Bank issued the $25,000 check to the Keller Group, Robert Lyons, the district manager of U.S. Bank, suddenly "withdrew the $25,000 check" as a result of a "disagreement" between Lyons and the "security department" and a former member of the Keller Group. The complaint alleges that Lyons's withdrawal of the extension of credit to the Keller Group was based on the race (African American) of its members, violating 42 U.S.C. §1981.

On summary judgment, defendants submit the affidavit of Mary Ann Gamiere, Project Manager and Regional Loan Coordinator for U.S. Bank. Gamiere states that "The Keller Group of Georgia Distributor"[2] made eight related applications for credit with U.S. Bank between July 11, 2011 and July 29, 2011, but all of the applications were rejected by the bank except for an application for a business credit card with a $12,000 credit limit which was approved.

Gamiere asserts that all of the Keller Group's applications were taken by Barry Hamilton, who at the time was an Assistant Manager of a U.S. Bank branch in Cleveland. The Keller

---

[2] Edwards, a member of the Keller Group, testified that this entity ("the Keller Group of Georgia Distributors/Real Estate Developers, Inc.") is "the Keller Group" that is the plaintiff in the case. (Edwards Dep. at 9-10.)

Group's original credit application, taken by Hamilton on July 11, 2011, was for a $100,000 unsecured business line of credit and represented that: (1) Alfred Edwards owned 55% of the company, Keith Weaver owned 23%, and Ernestine Davis owned 22%; (2) the company's gross annual sales were $500; and (3) the company's business was "commercial and institutional building construction." The application contained no information about the race of the company's owners or co-applicants and was not reviewed by any individual employee. As Gamiere explained in her affidavit, the credit application process at the U.S. Bank branch where Hamilton worked was automated so that Hamilton's role was merely to enter the applicant's information into the system. The July 11, 2011 application was rejected by the bank's automated system because Edwards had no "FICO credit score" and had 20 major adverse items on his credit report. Further, the minimum amount for the loan applied for was $10,000, but the Keller Group's reported gross sales ($500) on its application would have only qualified for a $100 loan (20% of the Keller Group's gross sales) under the bank's lending parameters.

As Gamiere further explained in her affidavit, the Keller Group, through Hamilton, submitted additional applications for credit with U.S. Bank on July 13th, 14th, 19th, 26th, and 29th, 2011 (two applications were submitted on July 19th). The applications submitted on July 13th, 14th, and 19th were all for a $100,000 business line of credit. These applications listed other individuals (including Robert Holtz) as owners of the Keller Group and co-applicants than were listed on the Keller Group's initial loan application and contained different descriptions of the Keller Group's business, length of time it had been in business, and annual sales. Like the initial application, none of the Keller Group's subsequent applications disclosed any information about the race of the co-applicants or the Keller Group. Gamiere asserts that all of the Keller

3

Group's subsequent applications for a business line of credit were rejected by U.S. Bank for a number of reasons under its ordinary underwriting parameters. (Gamiere Aff., ¶¶6-10.)

The July 29, 2011 application originated by Barry Hamilton was for a personal unsecured "Premier Line of Credit," and the applicant was Neil A. Dick. This credit application was rejected because the applicant's debt-to-income ratio was too high to support the minimum credit amount. (Gamiere Aff., ¶12.)

The July 26, 2011 application was for a business credit card. Only one owner of the Keller Group (Micah Mitchell) was listed on the application. Based on the information in the application and the Bank's parameters, the computerized application system approved the application for a credit card with a maximum credit line of $12,000. After the application was approved, Barry Hamilton at the branch completed the steps necessary to have the credit card issued. As with all of the other applications submitted by the Keller Group, there was no information on the application for the credit card about the race of the Keller Group or the applicant. (Gamiere Aff., ¶11.)

Edwards, who was designated as a Rule 30(b)(6) witness, testified that the Keller Group opened a silver business checking account at U.S. Bank with an initial deposit of $100 at U.S. Bank on July 11, 2011, at the direction of Barry Hamilton. (Edwards Dep. at 38-39.) According to Edwards, the checking account was opened because: "Barry said we didn't have an account there so the first thing that had to be done was to put anything in it, whatever the minimum was, just to get it started." (*Id*. at 39.) Ernestine Davis was the president of the Keller Group at the time and was the signator on the checking account.

According to Edwards, on July 26, 2011, Edwards signed Davis's name to a check for

4

$25,000 drawn on this checking account to pay expenses of the Keller Group. Both Edwards and plaintiff's other Rule 30(b)(6) designee, Robert Allen (who identified himself as the senior executive vice president with the Keller Group that is an Ohio corporation), testified that Hamilton told them that U.S. Bank had approved or was going to extend the Keller Group a $100,000 line of credit. (Edwards Dep. at 49; Allen Dep. at 31.) Edwards attempted to deposit the $25,000 check purporting to draw on the $100,000 line of credit into another Keller Group account at Woodforest Bank.

But U.S. Bank refused to pay the $25,000 check. Allen testified that when U.S. Bank refused to pay the check, Edwards called him and instructed him to go to Woodforest Bank and wait for a certified check to be delivered from U.S. Bank. He testified that Barry Hamilton said that U.S. Bank would deliver a certified check to Woodforest Bank to cover the $25,000 check drawn on the account. However, Allen testified that a certified check from U.S. Bank never arrived. Later that evening, Allen asked Hamilton why a check was not delivered, but Hamilton did not respond. (Allen Dep. at 29.)

**Standard of Review**

Federal Rule of Civil Procedure 56 governs summary judgment and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not

5

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986). In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

**Discussion**

In order to establish a claim for race discrimination under section 1981, a plaintiff must plead and prove that: (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a). *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). Section 1981(a) protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts." 42 U.S.C. §1981(a). The statute defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

The "intent" element of a Section 1981 claim can be established either by direct evidence or inferentially. *Amini*, 440 F.3d at 358. When a claimant seeks to prove intentional discrimination inferentially in a §1981 case, federal courts follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases as described in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248. *Amini*, 440 F.3d at 358. If a plaintiff establishes the elements of a *prima facie* case under §1981, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for its action. If the defendant comes forward with such a justification, the plaintiff has the burden of offering evidence demonstrating that the defendant's justification is a pretext to mask its true discriminatory intent. *Id*.

Lyons and U.S. Bank move for summary judgment on the Keller Group's claim under Section 1981, asserting that "[t]here is no evidence in this case from which any reasonable mind could find that an extension of credit was denied or canceled because of racial animus." (Def. Mem. at 10.) Defendants rely on Gamiere's affidavit to support the proposition that the bank never entered into a contract for a line of credit with the Keller Group and that race was not a factor in the bank's rejection of the Keller Group's applications for credit, or its approval of the business credit card. Rather, defendants contend the evidence shows that the bank rejected (or accepted) the Keller Group's various credit applications according to its lending parameters. It did not consider the race of the Keller Group or its members, which was not disclosed in the various credit applications.

In addition, defendants contend deposition testimony given by the plaintiff's own Rule 30(b)(6) witnesses refutes its allegation that the bank "cancelled" any credit extended to the

7

Keller Group on the basis of the race of the Keller Group or its members. To support this, defendants point to testimony given by Alfred Edwards that Robert Holtz, a former and disgruntled member of the Keller Group who had a business disagreement with the Keller Group, created the "whole mess" with the bank in that Holtz falsely told the bank's security department that Barry Hamilton was a member of the Keller Group. (*See* Edwards Dep. at 70, 131, 134.) Defendants contend that, according to plaintiff's own witness, Holtz's conduct in informing the bank that Hamilton was a member of the Keller Group was what caused the bank to cancel its decision to extend credit to the Keller Group, not intentional race discrimination.[3]

Defendants also point out that plaintiff's other Rule 30(b)(6) witness, Robert Allen, likewise did not testify during his deposition that racial animus was the reason the bank refused to pay the $25,000 check drawn by the Keller Group. Allen testified that Barry Hamilton orally represented that the bank was going to lend the Keller Group money, but Hamilton "didn't deliver what he stated he had in place." (Allen Dep. at 30, 34.)

Thus, defendants' position is that there is no evidence that defendants intended to discriminate against the Keller Group or its members on the basis of race or that it extended any line of credit to the Keller Group in the first place that was cancelled or withdrawn.

In its opposition brief, the Keller Group takes the position that a line of credit was in fact "granted" to it by U.S. Bank "and then snatched right from under the group in an unlawful breach of a loan agreement" as a result of racial animus. (Opp. at 5, 7.)

---

[3] Plaintiff asserts that, after the conduct by Holtz, in addition to "a complete withdrawal of [the Keller Group's] line of credit, Edwards was indicted for passing a bad check and theft and Barry Hamilton's employment at U.S. Bank was terminated. (Pltf. Opp. at 2.)

8

The Court agrees with defendants.  The Keller Group does not point to evidence from which a reasonable jury could conclude that a line of credit had been extended or approved by U.S. Bank.  The Keller Group relies solely only two unauthenticated exhibits attached to its opposition brief to support its position that a line of credit existed.  (Pltf. Opp., Exs. C and D).  However, in addition to being unauthenticated, neither of these exhibits on their face indicate that U.S. Bank approved or extended to the Keller Group a loan or $100,000 line of credit.  Exhibit C appears to be a copy of the $25,000 check the Keller Group wrote on the checking account the Keller Group opened at U.S. Bank and attempted to deposit at Woodforest Bank.  Exhibit D appears merely to be an informational letter from U.S. Bank to the Keller Group pertaining to the Keller Group's checking account.  In addition, the Keller Group does not point to or submit any evidence with its opposition brief to rebut Gamiere's affidavit testimony that the Keller Group did not meet the bank's parameters and requirements for the lines of credit for which the Keller Group applied.  Gamiere's affidavit testimony that the Keller Group did not qualify for the lines of credit in question stands uncontradicted.

As noted above, Edwards and Allen both testified that Barry Hamilton represented to them that the bank was going to extend a line of credit to the Keller Group.  But such representations by Hamilton do not demonstrate that any loan or line of credit was ever actually made or extended.  Rather, as Allen testified, the evidence suggests that despite Hamilton's representations, Hamilton "didn't deliver what he stated he had in place."  (Allen Dep. at 34.)

In sum, the Keller Group has not come forward with evidence on summary judgment from which a reasonable jury could conclude that it qualified for the loans it sought from U.S. Bank, or that any loan or line of credit other than the business credit card with a $12,000 credit

9

limit was ever actually approved or extended by the bank.

Likewise, the Keller Group has failed to point to evidence on summary judgment from which a reasonable jury could conclude that credit was not extended due to intentional race discrimination on the part of the bank (the second element of a *prima facie* case). Plaintiff's theory in the case is that race discrimination occurred because

> once Robert Lyons learned of the racial makeup of the group's owners and that this black group was attempting to empower the black community with the reconstruction of the Martin Luther King, Jr. Plaza to an Entertainment Complex only then did Lyons pull the $100,000.00 approved line of credit.

(Pltf. Opp. at 7.)

But plaintiff has failed to submit evidence sufficient for a reasonable jury to find race discrimination. As discussed above, the undisputed evidence on summary judgment is that the Keller Group did not qualify for the loans it sought. There is no evidence from which a reasonable jury could find that the bank extended the Keller Group a $100,000 line of credit. The Keller Group has failed to point to facts or documents on summary judgment evidencing a loan. In addition, the plaintiff itself contends in its opposition brief that the bank knew the racial makeup of its members prior to its submission of its credit applications because it gave the bank a business plan that "proudly displayed photos of the black owners along with photos of over ten black members" when it "initially approached" the bank for a loan. (Pltf. Opp. at 4.) This contradicts plaintiff's asserted theory that the bank engaged in race discrimination by suddenly cancelling a loan it initially approved once it learned of the racial makeup of the Keller Group from Holtz.

Furthermore, the only "evidence" of race discrimination to which the Keller Group refers on summary judgment are "affidavits" by Roosevelt Coats, Robert Allen, and Keith Weaver.

(Pltf. Opp., Ex. A.)  Coats, Allen, and Weaver all assert that, on or about July 29, 2011, Barry Hamilton told them at a restaurant in Cleveland that the Keller Group's application for credit "was denied after it had been approved and that if the Keller Group had been a white group, he would have been praised for bringing into the Bank . . . such an account with so much potential.  Instead, he was taken to the Security department and told to either resign or be terminated."  (Pltf. Ex. A.)  Allen states in a second affidavit that he witnessed a conversation between Harvey Smith of Woodforest Bank and Barry Hamilton on or about July 26, 2011, "confirming that there were sufficient funds in a check in the amount of $25,000 payable to the Keller Group of Ga. and drawn on U.S. Bank."  (*Id.*)

These affidavits are insufficient to create a genuine issue material fact that defendants engaged in intentional race discrimination.  First, as defendants point out in their reply brief, the affidavits are not properly sworn.  *See, e.g.*, *Worthy v. Michigan Bell Telephone Co.*, 472 Fed Appx. 342 (6th Cir. 2012) ("An affidavit used to support or oppose a motion for summary judgment is required to be sworn to by the affiant in front of an officer authorized to administer oaths"); *Zainalian v. Memphis Bd. of Ed.*, 3 Fed. Appx. 429, 430 (6th Cir. 2001) ("As [plaintiff] neither verified his affidavit nor complaint, signed them under oath, nor signed them under penalty of perjury pursuant to 28 U.S.C. §1746, the facts averred to therein lacked the force and effect of an affidavit for purposes of responding to a motion for summary judgment.").  Coats, Allen, and Weaver did not swear under oath that the statements made in their affidavits are true and correct under penalty of perjury; they merely attest that they affixed their signatures to the affidavits of their "own free will."

Even if the affidavits are properly sworn and may be considered, the affidavits at the

11

most demonstrate that Hamilton stated in the presence of Coats, Allen, and Weaver that the bank would have granted the Keller Group a loan had the Keller Group been a "white group."  But Hamilton's statement in this regard is insufficient for a reasonable jury to find that the bank actually discriminated against the Keller Group on the basis of race, or to show that the bank's stated reasons for declining credit to the Keller Group (*i.e.*, the Keller Group's failure to satisfy the bank's lending criteria) are a pretext for discrimination, given that the plaintiff has failed to point to evidence demonstrating that it was qualified for the loans in question.  As discussed above, Gamiere's affidavit testimony stands undisputed that the Keller Group did not qualify for a line of credit under the bank's lending parameters.  Hamilton's statements alone are insufficient for a reasonable jury to find that credit would have been extended on the Keller Group's qualifications had the Keller Group been a white group.

In sum, plaintiff has failed to point to evidence on summary judgment from which a reasonable jury could find that defendants intended to discriminate against it on the basis of race, or that defendants abridged a right as to the making or enforcement of contracts as protected by §1981 such as is required to make out a *prima facie* case under §1981.  Even assuming a *prima facie* case, the evidence is not sufficient for a reasonable jury to conclude that defendants' asserted reason for failing to extend the Keller Group credit on the $25,000 check the group drew on its checking account (*i.e*., that the bank never extended the Keller Group a line of credit as the Keller Group did not qualify for such credit) was a pretext for intentional race discrimination.  Pretext is not shown because the plaintiff does not submit evidence demonstrating that it was qualified for the credit.

**Conclusion**

For the reasons stated above, defendants' motion for summary judgment as to the remaining claim under Section 1981 is granted.

IT IS SO ORDERED.


                                              /s/Patricia A. Gaughan
                                              PATRICIA A. GAUGHAN
Date:   12/13/12                  United States District Judge